UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAYEVON BLAINE,
    Plaintiff,

v.                                          3:21cv570 (KAD)

D. WALKER (WARDEN), et al.,
    Defendants.

## **INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

The plaintiff, Jayevon Blaine, a sentenced prisoner[1] in the custody of the Connecticut Department of Correction ("DOC") who is currently housed at Osborn Correctional Institution,[2] filed this civil rights complaint under 42 U.S.C. § 1983 against Cheshire Correctional Institution ("Cheshire") Warden D. Walker, Captain R. Taylor, and Counselor Gargano in their individual and official capacities alleging certain constitutional violations. Specifically, he asserts that defendants violated his Eighth Amendment and Fourteenth Amendment rights when he was housed under inhumane conditions of confinement at Cheshire and when the defendants failed to afford him an opportunity grieve his conditions of confinement. ECF No. 1. His complaint seeks damages and declaratory and injunctive relief. *Id.* at 5, 11-12. Upon initial review, the Court permits Blaine's Eighth Amendment claim to proceed.

### **STANDARD OF REVIEW**

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that on February 21, 2014, Blaine received a fifteen-year sentence. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=354564.

[2] He is proceeding *pro se* and *in forma pauperis*.

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ALLEGATIONS**

Blaine was incarcerated at Cheshire commencing on March 25, 2019. Compl. at ¶ 8. He was moved to different units until he was housed in Cell 27 in South 4. *Id.* at ¶ 9. After living in this cell, Blaine noticed that he started to have chest and breathing problems and was sent to the hospital for breathing problems three to four times. *Id.* at ¶¶ 10, 11. He later found out that there

2

was mold in the ventilation system. *Id.* at ¶ 12. Dr. S. Charles noticed that Blaine had diminished lung capacity on his left side. *Id.* at ¶ 13. He provided Blaine with an Albuterol inhaler. *Id.* at ¶ 14. Blaine later received additional breathing treatment to help him breathe and provided with a steroid inhaler. *Id.* at ¶¶ 15-16.

Blaine requested that Captain Taylor clean out the vent, but it took weeks before steps were taken to clean out the vent, although such measures did not remediate the mold that had been in the vent for years. *Id.* at ¶ 19. Blaine made a request to Captain Taylor to be moved due to his medical condition, but Captain Taylor responded that Blaine needed to talk to the Warden. *Id.* at ¶ 21.

The medical staff later had Blaine moved out of his cell, but Blaine was placed in Cell 26 in South 4, which had a problem with its pipes. *Id.* at ¶ 26. Blaine brought this problem to the attention of Warden Walker when she was doing her rounds; Warden Walker responded that she would look into it. *Id.* at ¶ 27. Blaine also informed Warden Walker about her how her staff had placed him at risk by putting him in a cell with inhumane conditions. *Id.* at ¶ 28. Warden Walker was aware of his health issue but did not do anything to remedy the situation. *Id.*

Cell 26 has been out of order for at least two years; and the pipe problems have caused a mold problem. *Id.* at ¶¶ 29-30. Blaine used his own towels and blankets to soak up the water in the cell, and mold and fungus developed on the towels and blankets. *Id.* at ¶ 31, 40.

Captain Taylor and Counselor Gargano walked around the unit in late-January to ask inmates if there were any problems with the cell; Blaine showed them the conditions that had adversely affected him during the last month. *Id.* at ¶ 32. He told the defendants that he needed to

be moved and the pipe needed fixing; Taylor and Gargano responded that they knew about the pipe problem but needed outside people to conduct the repairs. *Id.* at ¶¶ 34-37.

The mold is causing Blaine to have respiratory problems and asthma. *Id.* at ¶ 38. Blaine has written an inmate request to Gargano, and a Level-1 Grievance about the problems with his cell. *Id.* at ¶¶ 39-40. Blaine's grievances were denied for the stated reason that his work order regarding his cell had been addressed, and he had been provided with cleaners and was responsible for maintaining sanitary living conditions. *Id.* at pp. 8-10. Blaine is still sitting in cell with mold and fungus problems in the vent and inside of the walls and has to use his blankets and towels to soak up water in the cell, thereby causing more mold and fungus in the cell. *Id.* at ¶ 40.

Blaine and his cellmate were told that they could also always move to the segregation unit or refuse housing. *Id.* at ¶ 42. However, Blaine has declined this offer because he has not been involved with any infraction. *Id.* at ¶ 43. Blaine now has a chronic cough, spits up mucus, has a sore throat and uses his inhaler twice a day. *Id.* at ¶ 44.

## DISCUSSION

Blaine alleges that all three defendants acted with indifference to his conditions of confinement in violation of his Eighth and Fourteenth Amendment rights; he also alleges that defendants violated his right to Fourteenth Amendment due process by depriving him of the opportunity to aggrieve his condition of confinement. *See id.* at ¶¶ 47-51.

### Conditions of Confinement

Blaine is a sentenced prisoner and therefore his claims regarding his conditions of confinement implicate the Eighth Amendment prohibition against cruel and unusual punishment

4

rather than the Fourteenth Amendment Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017). Thus, Blaine's Fourteenth Amendment claim premised upon his conditions of confinement is DISMISSED.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate two elements.

First, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). In *Helling v. McKinney*, the Supreme Court held that the Eighth Amendment protects prisoners from an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's future health. 509 U.S. 25, 33–35 (1993).

Second, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, this *mens rea*

5

element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

The Second Circuit has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment.'" *Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013). The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" although the Court instructed that whether a claim states a constitutional deprivation "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick,* 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste).

Exposure to mold can present an Eighth Amendment claim. *See Abrams v. Waters,* No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *4 (D. Conn. Feb. 2, 2018) (black mold on cell vent could plausibly allege Eighth Amendment); *Board v. Farnham,* 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment); *Maxie v. Levenhagen,* No. 3:13–cv–1280, 2014 WL 3828292, at * 1 (N.D. Ind. Aug.4, 2014) (holding that allegations that the plaintiff was exposed to, *inter alia,* "excessive amounts of 'black mold, mildew, and asbestos,'" which caused him "breathing difficulties," were sufficient to withstand dismissal). However, not every exposure gives rise to a harm of constitutional dimension. Courts generally consider whether the plaintiff has alleged facts regarding the severity or nature of the exposure which would give rise to a plausible inference that the mold exposure presents a substantial risk

6

of serious harm to the plaintiff. *See, e.g., See Vogel v. Smith*, No. 20-CV-6349 (NSR), 2020 WL 5947729, at *3 (S.D.N.Y. Oct. 6, 2020) (dismissing claim of deliberate indifference based on exposure to mold, mildew, insects and sewage due to failure to provide facts showing that conditions put his health or safety at risk); *Reichhart v. Galipeau*, No. 3:20-CV-638-JD-MGG, 2020 WL 5632453, at *1 (N.D. Ind. Sept. 21, 2020) ("mild exposure to black mold and asbestos while doing maintenance did not rise to constitutional violation").

Here, Blaine alleges that his exposure to the mold and fungus in his cells at Cheshire was prolonged, severe and unremedied despite his requests. He further alleges that this exposure has resulted in respiratory and breathing problems and has necessitated the use of a steroid inhaler twice a day. As Blaine has sufficiently alleged that each defendant was aware of the unsanitary conditions and their impact on his health, but failed to take adequate remedial measures, the court will permit Blaine's Eighth Amendment deliberate indifference claims to proceed against all defendants.[3]

**Fourteenth Amendment Due Process Violation**

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Blaine asserts that defendants violated his Fourteenth Amendment due process rights by depriving him of an opportunity to

---

[3] To the extent intended, which is not clear, Blaine's Eighth Amendment claim against Warden Walker may not proceed on a theory of supervisory liability with respect to the conduct of the other defendants. It is well-established that an inmate must allege facts to establish the personal involvement of a defendant in an alleged constitutional violation in order to hold that defendant liable for an award of damages under § 1983. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

7

"aggrieve the condition his confinement without having to use the option of going to [segregration] for no reason." Compl. at ¶ 51.

Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (*per curiam*). Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. A plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

Blaine summarily asserts that being offered a cell in segregation as a remedy to his unhealthy cell conditions violated his Fourteenth Amendment due process rights. But he has not identified any cognizable liberty interest implicated by this conduct, separate and distinct from the interests addressed in his Eighth Amendment claims, to wit, the moldy conditions in his cell. These allegations do not therefore plausibly allege a due process claim.

Blaine's claim may also be construed as alleging deprivation of his rights under the prison grievance procedure. However, inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance

procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures'").

Thus, Blaine's Fourteenth Amendment claims are dismissed.

**Official Capacity Claims**

Blaine asserts requests declaratory and injunctive relief against defendants in their official capacities.[4]

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official

---

[4] Any claims for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Further, the official capacity claims seeking prospective injunctive relief are moot because he is no longer housed Cheshire (the docket reflects that he is housed at Osborn Correctional Institution). *See Shepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials at that facility."). Moreover, Blaine's claim does not satisfy the capable of repetition, yet evading review doctrine, which represents an exception to the general rule of mootness. *Murphy v. Hunt*, 455 U.S. 478, 482–83 (1982). This doctrine is limited to cases where the challenged action is of duration too short to be fully litigated prior to cessation or expiration; and there is a "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). A general possibility that Blaine could be moved again to a cell which presents a mold problem is too speculative to satisfy this exception to mootness. *See Preiser v. Newkirk*, 422 U.S. 395, 403 (1975); *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2018 WL 4571679, at *10 (S.D.N.Y. Sept. 24, 2018) (collecting cases finding that inmates' claims of possible future transfer or return to institution is too speculative to satisfy capable of repetition doctrine). Accordingly, all claims brought against the defendants in their official capacity are subject to dismissal.

capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Blaine's request for a declaratory judgment that defendants have violated his rights under the constitution does not satisfy the exception to Eleventh Amendment immunity. In addition, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016). If Blaine prevails on his Eighth Amendment claim for unconstitutional conditions of confinement, a judgment in his favor would serve the same purpose as a declaration that the conditions were unconstitutional. Thus, Blaine's request for declaratory relief is not distinct from the relief sought in his section 1983 claims and is dismissed. *See, e.g., United States v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue, Greenwich, Connecticut*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

**ORDERS**

The Court enters the following orders:

(1) All claims against the defendants in their official capacities are DISMISSED. The case shall proceed on Blaine's Eighth Amendment claims against Warden Walker, Captain R. Taylor and Counselor Gargano in their individual capacities. Blaine's Fourteenth Amendment claims are DISMISSED.

10

(2) The clerk shall verify the current work address of Warden Walker, Captain R. Taylor and Counselor Gargano with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses on or before **July 5, 2021**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **December 23, 2021**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by January 23, 2022.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 24th day of June 2021 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge